UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
F I L E D
MAR 1 5 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-137-GWU

CHARLES HATMAKER,            PLAINTIFF,

VS.      **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,        DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his application for Disability Insurance Benefits (DIB). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

1

Hatmaker

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to

2

support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1)

3

whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency

6

may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Charles Hatmaker, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of degenerative disc disease of the lumbar spine and being status post three knee surgeries. (Tr. 20). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that Mr. Hatmaker retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 18-21). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's vocational background of work with no transferable skills could perform any jobs if he were limited to light level exertion, and also had the following non-exertional impairments. (Tr. 314). He: (1) could do no climbing of ladders; (2) could occasionally crouch, crawl, kneel, and climb stairs; and (3) would have "difficulty" with reading and writing. (Id.). The VE responded that there were jobs that such a

7

person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 315).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depict the plaintiff's condition. There is an additional issue in that the plaintiff's Date Last Insured (DLI) was September 30, 2003 (Tr. 71), meaning that he had to establish disability existing before this date in order to be entitled to DIB.

Mr. Hatmaker alleged disability beginning February 25, 1999 due to an injury to both knees which left him unable to sit, stand, or walk for any distance. (Tr. 88). He also described nervousness, irritability, and poor sleep. (Id.). At the administrative hearing, he added that his back had also been injured in the same accident. (Tr. 296). He also testified there had been a point at which his medication use had gotten "out of hand," and he had been jailed for 15 months, ending in August, 2002, after being convicted of selling pills. (Tr. 304-5). Despite having three surgeries on his right knee, it was still "loose and wiggly," and his left knee also needed an operation. (Tr. 296, 299). His lower back pain was constant, and was unaffected even by strong pain medications. (Tr. 307). He felt that he had graduated from high school only because he was on the football team, and that he could read only at the third grade level. (Tr. 307-8).

8

Although the plaintiff had extensive medical treatment for his knee problems, including operations, from specialists, most of whom appear to agree that he had some degree of pathology, none of the treating sources from the relevant period before the DLI, including Dr. Yasser Nadim (Tr. 139-43, 173-8), Dr. Thomas Menke (Tr. 154-5), Dr. Darren Johnson (Tr. 193-8), or Dr. Howard Lynd (Tr. 210-15, 265-74), listed any specific functional restrictions. Dr. W. Ben Kibler, who examined Mr. Hatmaker on one occasion on June 28, 2004, well after the DLI, indicated that both knees were "compromised and probably would benefit by getting surgical treatment," but did not suggest any functional restrictions, either. (Tr. 281). The only examining source to suggest restrictions was Dr. Bruce Guberman, who examined the plaintiff one time on March 2, 2001 and reviewed previous medical records. (Tr. 201-2). He diagnosed a torn anterior cruciate ligament and tear of the medial and lateral menisci of both the left and right knees, along with acute and chronic lumbosacral pain. (Tr. 206). He opined that the plaintiff could even return to his past work of construction with a "modified work assignment," and assigned a 19 percent impairment of the whole person for worker's compensation purposes. (Tr. 206-8).

State agency physicians who reviewed the record following Dr. Guberman's examination concluded that Mr. Hatmaker could perform "medium" level exertion, could never climb ladders, ropes, or scaffolds, and could occasionally kneel, crouch, crawl, and climb ramps or stairs. (Tr. 225-32, 237-44). The non-exertional

9

Hatmaker

restrictions are essentially consistent with the ALJ's hypothetical question, although she reduced Mr. Hatmaker's exertional capacity to the "light" level.

While the plaintiff correctly points out on appeal that the ALJ failed to discuss Dr. Guberman's assessment, his failure to identify specific restrictions renders the error harmless in the present situation. The ALJ accepted that the plaintiff had "severe" impairments due to his knee surgeries and degenerative disc disease of the lumbar spine, and that he could not return to his past relevant work, as Dr. Guberman stated. Otherwise, Dr. Guberman spoke only in terms of percentages of impairment for worker's compensation purposes, and the ALJ accepted the functional restrictions of a state agency physician who discussed the report of Dr. Guberman. In the absence of specific restrictions from the examiner, no useful purpose would be served by a remand on this issue.

The plaintiff's other argument on appeal is that the ALJ failed to properly describe his limitations as found by a consultative psychological examiner, Dr. Robert Fitz. Dr. Fitz had indicated that the plaintiff would have a "good" ability to understand, remember, and carry out simple directions, sustain attention to perform simple, repetitive tasks, relate to others including fellow workers and supervisors, and tolerate stress and pressures of day-to-day work activity. (Tr. 224). State agency psychologist Ilze Sillers reviewed the record and concluded that the plaintiff did not even have a "severe" mental impairment. (Tr. 246, 258). The plaintiff

10

Hatmaker

argues, however, that Dr. Fitz's statement that the plaintiff would "probably" be unable to read directions, and his finding on mental status examination that the plaintiff could not perform multiplication, are factors that should have been presented to the VE. However, Dr. Fitz did not diagnose illiteracy, specifically finding only that the plaintiff "reports illiteracy;" the plaintiff also told Dr. Fitz that he was able to look up names in the telephone book and dial long distance. (Tr. 222, 224). Therefore, at best, the psychologist was speculating regarding the plaintiff's ability to read commands. In any case, the ALJ specified that the hypothetical individual would have difficulty reading, and the ALJ identified "unskilled" jobs. (Tr. 315).

The plaintiff also appears to argue that the hypothetical question should have contained a mention of the psychologist's diagnosis of adjustment disorder with depressed mood. However, "[t]he vocational expert is not expected to evaluate the claimant's medical conditions in making [his] determination." Webb v. Commissioner of Social Security, 368 F.3d 629, 633 (6th Cir. 2004). The evidence supports the ALJ's finding that the plaintiff did not have a "severe" mental impairment.

The decision will be affirmed.

This the ___15___ day of March, 2006.

_____
G. WIX UNTHANK
SENIOR JUDGE

11